UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BUREAU VERITAS COMMODITIES                    CIVIL ACTION
AND TRADE, INC.

VERSUS                                                NO. 20-3374

RENISHA NANOO, ET AL.                          SECTION "R" (4)

## ORDER AND REASONS

Before the Court are two motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6) by defendants Renisha Nanoo[1] and Cotecna Inspections,

Inc.[2]  Cotecna also moves in the alternative under Rule 12(e) for a more

definite statement.[3]  Plaintiff Bureau Veritas Commodities and Trade, Inc.

opposes the motions.[4]  As discussed below, the Court grants the Rule

12(b)(6) motions in part and denies the motions in part.  The Court denies

Cotecna's Rule 12(e) motion.

---

[1]    R. Doc. 38.
[2]    R. Doc. 39.
[3]    *Id.*
[4]    R. Docs. 41, 42.

## I.    BACKGROUND

This claim arises from allegedly improper competitive trade practices. In its amended complaint, Bureau Veritas alleges that its operations include a "metals and minerals" ("M&M") inspection, sampling, testing, and certification business.[5]   Plaintiff alleges that several of its high-level employees in its M&M division, including Nanoo, colluded with defendant Cotecna to steal Bureau Veritas' trade secrets and employees to develop a competing M&M business over a matter of months.[6]   Plaintiff alleges that the leader of its M&M division, Stefanus Nel, conspired with Cotecna's CEO to orchestrate the exodus of employees from Bureau Veritas to Cotecna.[7] Plaintiff alleges that, from February to June 2020, all but one of its M&M division's senior management resigned, opened a competing lab for Cotecna, and pursued Bureau Veritas' customers.[8]   Plaintiff alleges that Nanoo was "second in command" in its M&M division, and was responsible for operations, finances, and management of the "Solid Fuels" operations and laboratories, which were centrally located in Marrero, Louisiana.[9]

---

[5]    R. Doc. 31 at 1-2, ¶ 1.
[6]    *Id.* at 2, ¶ 2.
[7]    *Id.* at 13-14, ¶ 31.
[8]    *Id.* at 2, ¶¶ 2-3.
[9]    *Id.* at 7, ¶ 18.

Before leaving Bureau Veritas, Nanoo allegedly gathered Bureau Veritas' confidential information.[10]  Plaintiff alleges that Nanoo connected two personal external hard drives to her Bureau Veritas laptop.[11]  A forensic examination allegedly showed that at least one of the drives contained customer lists, pricing information, financial information, laboratory information, and an archive of Nanoo's Outlook files.[12]  Plaintiff also alleges that Nanoo used a personal Dropbox account on her work computer.[13] Nanoo allegedly kept both hard drives and the information they contained after leaving her employment with plaintiff.[14]  Plaintiff also contends that Nanoo accessed Bureau Veritas' network, and deleted information from it.[15] Once at Cotecna, Nanoo allegedly began soliciting Bureau Veritas' M&M customers.[16]

Plaintiff alleges the following 11 "counts:" (1) breach of contract against Nanoo;[17] (2) violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA"), against both Cotecna and Nanoo;[18] (3) violation of the

---

[10]     *Id.* at 3, ¶ 4.
[11]     *Id.*
[12]     *Id.* at 3, 15-16, ¶¶ 4, 34-37.
[13]     *Id.* at 17, ¶ 39.
[14]     *Id.* at 3, ¶ 4.
[15]     *Id.* at 3, 16-17, ¶¶ 4, 38.
[16]     *Id.* at 3, ¶ 5.
[17]     *Id.* at 18-21, ¶¶ 45-53.
[18]     *Id.* at 21-24, ¶¶ 54-68.

Louisiana Uniform Trade Secrets Act, La. Rev. Stat. § 51:1431, *et seq.* ("LUTSA"), against both Cotecna and Nanoo;[19] (4) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) ("CFAA"), against Nanoo;[20] (5) violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. § 51:1401, *et seq.* ("LUPTA"), against both Cotecna and Nanoo,[21] (6) breach of fiduciary duties against Nanoo,[22] (7) unjust enrichment against both Cotecna and Nanoo,[23] (8) conversion against both Cotecna and Nanoo,[24] (9) "conspiracy" under La. Civ. Code art. 2324(a) against both Cotecna and Nanoo,[25] (10) fraud against Nanoo,[26] and (11) injunctive relief under the DTSA and LUTSA.[27]

Cotecna and Nanoo filed motions to dismiss in response to plaintiff's original complaint.[28]  Plaintiff responded to these motions with an amended complaint.[29]  "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers

---

[19]    *Id.* at 24-26, ¶¶ 69-77.
[20]    *Id.* at 26-27, ¶¶ 78-86.
[21]    *Id.* at 27-28, ¶¶ 87-94.
[22]    *Id.* at 28-29, ¶¶ 95-99.
[23]    *Id.* at 29-30, ¶¶ 100-104.
[24]    *Id.* at 30-31, ¶¶ 104-109.
[25]    *Id.* at 31-32, ¶¶ 110-114.
[26]    *Id.* at 32, ¶¶ 115-119.
[27]    *Id.* at 32-34, ¶¶ 120-131.
[28]    *See* R. Docs. 19, 21.
[29]    *See* R. Doc. 31.

to and adopts by reference the earlier pleadings." *MacFarland v. Walker*, 214 F.3d 1349 (Table), at *1 (5th Cir. 2000) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)).   Here, plaintiff's amended complaint,[30] is the operative complaint, as it does not adopt by reference any other pleadings. Thus, the Court finds that Cotecna's and Nanoo's first motions to dismiss are moot.  *See Pettawa v. Nat'l Recovery Solutions, LLC*, 955 F.3d 299, 303 (2d Cir. 2020) (holding that, when faced with an amended complaint while a motion to dismiss is pending, a district court may dismiss the pending motion as moot).   The Court considers defendants' second motions to dismiss[31] below.  Additionally, Cotecna moves under Rule 12(e) for a more definite statement regarding plaintiff's trade secret and LUPTA claims.[32]

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[30]   R. Doc. 31.
[31]   R. Docs. 38, 39.
[32]   R. Docs. 38, 39.

that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments.  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.  *Id.*  "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'"  *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## III.  DISCUSSION

Defendants Cotecna and Nanoo move under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's claims for (1) misappropriation of trade secrets under the DTSA and LUTSA, and (2) unjust enrichment.

Additionally, Nanoo moves to dismiss plaintiff's claims for (3) breach of contract, (4) violations of the CFAA, and (5) conversion. Cotecna also moves to dismiss plaintiff's claim for (6) unfair trade practices under LUPTA. Plaintiff opposes the motions.[33] The Court considers the parties' arguments below.

### A. Misappropriation of Trade Secrets

#### 1. Motions to Dismiss

Cotecna and Nanoo move to dismiss plaintiff's trade secret misappropriation claims on the grounds that the alleged trade secrets are not adequately identified in the complaint.[34] To state a claim under the DTSA, Bureau Veritas must allege: (1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce. *Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 517 (E.D. La. 2018) (citing 18 U.S.C. § 1836(b)(1)). Similarly, to recover damages under the LUTSA, Bureau Veritas must prove: (1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) actual loss caused by the misappropriation. *Source Prod. & Equip. Co., Inc.*

---

33   R. Docs. 41, 42.
34   R. Doc. 38-1 at 8-12; R. Doc. 39-1 at 4-7.

*v. Schehr*, No. 16-17528, 2017 WL 3721543 (E.D. La. Aug. 29, 2017).  The

element at issue in defendants' motions is the first one—whether plaintiff has

alleged the existence of a trade secret.

> The DTSA, which was enacted in 2016, defines "trade secret[s]" as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--

> (A) the owner thereof has taken reasonable measures to keep such information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).  LUTSA's definition is substantially the same.  *See* La.

Rev. Stat. § 51:1431(4).

"[T]o allege a trade secret, the plaintiff must 'describe the subject

matter of the trade secret with sufficient particularity *to separate it from*

*matters of general knowledge in the trade* or *of special persons who are*

*skilled in the trade*, and to permit the defendant to ascertain at least the

boundaries within which the secret lies.'"  *Am. Biocarbon, LLC v. Keating*,

No. 20-00259, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020) (emphasis

8

added) (quoting *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020)).  Courts generally find that pleadings are inadequate when the alleged trade secrets are identified only by category or broad conclusory statements.  *See Intrepid Fin. Partners, LLC v. Fernandez*, No. 20-9779, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) ("Plaintiff merely references categories of information concerning its clients and ordinary business operations, and conclusorily alleges that such information is not readily available and affords [plaintiff] economic value such that it should be deemed a trade secret.").  In other words, a plaintiff may not "set out its purported trade secrets in broad, categorical terms," in a way that is merely "descriptive of the types of information that generally may qualify as protectable trade secrets . . . ."  *Vendavo, Inc. v. Price f(x) AG*, No. 17-06930, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).  Instead, a plaintiff must identify the "particular trade secrets [that it] has a basis to believe actually were misappropriated . . . ."  *Id.*

Here, plaintiff alleges the following information as its "trade secrets:"

(1) protected customer information (customer lists, pricing, bids, quotes, opportunities, contacts, preferences, purchasing history, sales volume, frequencies/schedules, and certificates);

(2) protected contractor and vendor information (vendor lists, contractor lists, locations used, contact information, pricing, rates, and services);

(3) protected employee information (employee lists, salaries, benefits, agreements, and organizational structure);

(4) protected laboratory technology (equipment lists, laboratory designs, and testing processes and procedures); and

(5) protected financial and operational information (operational strengths and weakness, profit and loss information, budgets and forecasts, business plans, growth and marketing strategies, and pricing strategies).[35]

The Court finds that plaintiff's trade secret allegations are sufficient as to some, but not all, of the information identified.

In *Guy Carpenter & Co, Inc. v. Provenzale*, 334 F.3d 459, 463 (5th Cir. 2003), the Fifth Circuit, applying Texas law,[36] considered three factors in determining whether a customer list was a trade secret: (1) what steps, if any, an employer has taken to maintain the confidentiality of its information, (2) whether a departing employee has acknowledged that the information is confidential, and (3) whether the information is readily ascertainable. District courts have applied the same analysis to other types of information, including employee lists. *See, e.g.*, *GovernmentCIO, LLC v. Landry*, No. 20-0949, 2021 WL 1102333, at \*5 (D. Md. Mar. 22, 2021); *Raybourne & Dean*

---

[35]    R. Doc. 31 at ¶ 55.

[36]    The definition of "trade secret" contained in the DTSA, 18 U.S.C. § 1839(3), and the LUTSA, La. Rev. Stat. § 51:1431(4), is substantively the same as the definition contained in the Texas Uniform Trade Secret Act.  Tex. Civ. Prac. & Rem. Code § 134A.002(6).

*Consulting, Ltd. v. Metrica, Inc.*, No. 14-918, 2016 WL 7497587, at *19-20 & n.258 (W.D. Tex. Feb. 19, 2016), *report and recommendation adopted*, No. 14-00918, 2016 WL 7496197 (W.D. Tex. Mar. 10, 2016), *aff'd*, 682 F. App'x 349 (5th Cir. 2017). The Court considers plaintiff's trade secret allegations in light of these questions.

First, plaintiff alleges that it takes certain steps to maintain the confidentiality of all its purported trade secret information. Plaintiff states that it requires employees to sign confidentiality agreements, requires them to abide by confidentiality and IT usage policies, password protects its information, limits access rights to information, and uses confidentiality disclaimers on emails.[37]

Second, plaintiff argues that Nanoo acknowledged the confidentiality of the information in the confidentiality agreement between it and Nanoo.[38] By signing the confidentiality agreement, Nanoo acknowledged that some categories of plaintiff's information are confidential.[39] Nevertheless, the agreement's definition does not extend to all of the information that plaintiff alleges are its trade secrets. The confidentiality agreement contains the following definition of "confidential information:"

---

[37] R. Doc. 31 at 22, ¶ 57.
[38] R. Doc. 31-1 at 2-3.
[39] *Id.* at 3.

11

> [A]ll information belonging to, used by, or developed by Inspectorate[40] or its customers including or relating to internal operations, policies and procedures, business strategies, pricing, billing Information, actual or potential customer lists, contracts, contract terms and conditions, sales lists, process descriptions, financial data, marketing plans, technology, software source codes, research and development plans, business plans, computer programs, computer software and systems, inventions, developments, formulas and trade secrets. Employee lists, employee salary information, and other nonpublic information regarding Inspectorate's personnel also constitute confidential information.[41]

The agreement plainly identifies the "customer information," "financial and operational information," and "employee information" that plaintiff claims as its trade secrets. But the agreement does not extend to "vendor and contractor information," or the type of "laboratory technology" alleged as a trade secret in plaintiff's amended complaint. Accordingly, the Court finds that plaintiff has failed to allege that Nanoo acknowledged the confidentiality of those purported trade secrets.

Third, plaintiff's allegations as to whether its purported trade secrets are readily ascertainable are sufficient for some of the information identified, but not all of it. Regarding its "customer information," plaintiff states in its complaint that:

---

[40]   Plaintiff alleges that Bureau Veritas was formerly known as Inspectorate America Corporation ("Inspectorate"). R. Doc. 31 at 1, ¶ 1.

[41]   R. Doc. 31-1 at 2.

> Bureau Veritas' M&M Division created, perfected, and safeguarded its quality control systems and supply chain processes to serve its customers on a personal basis. Bureau Veritas developed methodologies tailored to each customer—from inspecting carriers, refineries, and stockpiles to auditing bank vaults and storage facilities. Based on these methodologies and customer relationships, Bureau Veritas developed price lists, discount schedules, processes, methods, and other confidential and proprietary information.[42]

This statement sufficiently alleges that the customer information plaintiff claims as trade secrets "is not readily available," because the allegedly misappropriated information "contains individual customer preferences," "reflects a specialized knowledge of the customer's operations and needs," or contains "information which could only be achieved through personal solicitation." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 46 (2d Cir. 1999) (internal quotation marks and citations omitted).

The Court also finds that plaintiff has adequately alleged that its "financial and operational information" is not readily ascertainable. The information that plaintiff identifies, such as profit and loss information, budgets, business plans, and strategies, is frequently recognized by courts as a trade secret. *See TFC Partners, Inc. v. Stratton Amenities, LLC*, No. 19-58, 2019 WL 369152, at *3 (W.D. Tex. Jan. 30, 2019) (granting injunctive relief and finding that the plaintiff had shown a likelihood of success that its

---

[42]    R. Doc. 31 at 5, ¶ 13.

"pricing structure, customer lists, operational procedures, trainings, methodologies, financial information, budgets, employee compensation structures, labor distribution reports, and marketing strategies" were trade secrets); *Rulh*, 350 F. Supp. 3d at 519 (holding that a plaintiff sufficiently pleaded that its "financial statements, customer lists, and sales records" were trade secrets); *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014) (finding that a plaintiff adequately pleaded that its "profit and loss information, internal costs and overhead, operational information . . . , and specific bid and proposal information" were trade secrets). This type of internal operational and financial information concerning company performance evaluations, actual and forecast financial and budget information, and business plans and strategies, is the sort of unique and sensitive information that affords a business its competitive advantage. *See Schwimmer v. Presidio Indus. LLC*, No. 10-2213, 2011 WL 13089398, at *6 (N.D. Tex. Feb. 11, 2011) ("[A] trade secret is defined as any formula, pattern, device, or compilation of information used in the plaintiffs' trade or business that gives the holder of the information a competitive advantage.").

Similarly, some categories of plaintiff's "employee information" are often recognized as trade secrets. For example, while courts have found that "employee compensation structures" were trade secrets, *TFC Partners, Inc.*,

14

2019 WL 369152, at *3, others have found that employee identities were not. *ProV Int'l Inc. v. Lucca*, No. 19-978, 2019 WL 5578880, at *3 (M.D. Fla. Oct. 29, 2019) (dismissing a complaint alleging that plaintiffs' employees' identities were trade secrets, but noting that "a performance review or a salary recommendation" could be a trade secret). Under "employee information," plaintiff includes "employee lists, salaries, benefits, agreements, and organizational structure."[43]  From its complaint, it is impossible to determine whether plaintiff's "employee lists" and "organizational structure" contain only readily ascertainable information about the identities and job titles of its employees.  But the other "employee information" listed—employee salaries, benefits, and agreements—are plausibly the sort of private business information that courts recognize as trade secrets.  *See TFC Partners, Inc.* 2019 WL 369152, at *3.  The Court finds that plaintiff has sufficiently alleged that some of its "employee information" is a trade secret, but that it has not plausibly alleged that its "employee lists" or "organizational structure" qualify as trade secrets.

Plaintiff's amended complaint fails to plausibly allege that its "vendor and contractor information" is not readily ascertainable.  In some circumstances, vendor lists may constitute trade secrets.  *See, e.g.*, *Giasson*

---

[43]    R. Doc. 31 at 24, ¶ 70.

*Aerospace Sci., Inc. v. RCO Eng'g, Inc.*, 680 F. Supp. 2d 830, 843 (E.D. Mich. 2010) (finding that vendor information such as "knowledge of which vendors are the best sources for particular products" may constitute a trade secret); *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 n.4 (C.D. Cal. 2009) (noting that "vendor lists[] and pricing information are often determined to be trade secrets").  But here, plaintiff merely lists "vendor and contractor information," and several sub-categories of such information, in a conclusory fashion.[44]  Unlike for the customer information, discussed above, plaintiff provides no explanation as to how its vendor and contractor information is specialized business knowledge.  The Court finds that plaintiff has failed to allege that its "vendor and contractor information" is not readily ascertainable.

Finally, the "laboratory technology" for which plaintiff claims trade secret protection allegedly consists of "equipment lists, laboratory designs, and testing processes and procedures."[45]  Plaintiff provides no basis for the Court to conclude that this information is distinct from generally available knowledge, or information that any specialist in the M&M testing industry would know.  *See Select Energy Servs., Inc. v. Mammoth Energy Servs.,*

---

[44]  R. Doc. 31 at ¶ 55.
[45]  *Id.*

*Inc.*, No. 19-28, 2019 WL 1434586, at *5 (W.D. Okla. Mar. 29, 2019) (finding that a plaintiff's allegation that "technical know-how and processes" were trade secrets were "too vaguely pled to avoid dismissal"); *cf. Intertek USA Inc. v. AmSpec, LLC*, No. 14-6160, 2014 WL 4477933, at *5 (N.D. Ill. Sept. 11, 2014) (granting a preliminary injunction and finding that plaintiff had shown a likelihood of success on its claim that "testing methods" were trade secrets when "the precise mix and volume of methods that" plaintiff used were "not public knowledge").  Plaintiff's allegations as to its "laboratory technology" are conclusory, and the Court finds that plaintiff has failed to allege that this information is not readily ascertainable.

In sum, plaintiff has adequately alleged that the "customer information" and "financial and operational information" it identifies are trade secrets.  The Court also finds that plaintiff has plausibly alleged that its employee's salaries, benefits, and agreements are trade secrets.  The Court denies the motions to dismiss as to these alleged trade secrets.  But the Court holds that plaintiff has failed to plausibly allege that its "employee lists," "organizational structure," "contractor and vendor information," or its "laboratory technology" are trade secrets.  The Court grants defendants' motions to dismiss the trade secret misappropriation claims as to these

17

alleged trade secrets.  The Court will allow plaintiff to amend its complaint to remedy the deficiencies discussed here.

### 2.   *Motion for More Definite Statement*

As noted, Cotecna also brings a motion for a more definite statement under Federal Rule of Civil Procedure 12(e) on plaintiff's trade secret misappropriation claims.[46]  Cotecna's Rule 12(e) motion is brought in the alternative to its Rule 12(b)(6) motion.[47]  Having found that some of plaintiff's trade secrets are adequately alleged, the Court denies the Rule 12(e) motion as to those trade secrets.  Having granted Cotecna's motion to dismiss under Rule 12(b)(6) as to the inadequately pleaded trade secrets, the Court finds that the Rule 12(e) motion is moot.  Accordingly, the Court denies the motion under Rule 12(e).

## B.   Unjust Enrichment

Cotecna and Nanoo both move to dismiss plaintiff's unjust enrichment claim.[48]  The Louisiana Civil Code provides that the remedy for unjust enrichment "is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." La. Civ. Code art. 2298.  The Louisiana Supreme Court has set out five requirements

---

[46]   R. Doc. 39-1 at 6-7.

[47]   *Id.*

[48]   R. Doc. 39-1 at 9; R. Doc. 38-1 at 14-15.

for unjust enrichment claims: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and resulting impoverishment; (4) there must be an absence of 'justification' or 'cause' for the enrichment and the impoverishment; and (5) there must be no other remedy at law available to the plaintiff. *Baker v. Maclay Properties Co.*, 648 So. 2d 888, 897 (La. 1995). Defendants contend that plaintiff cannot meet the fifth element because plaintiff has other remedies available: the additional claims it asserts in this lawsuit.[49]

Plaintiff argues that it may plead unjust enrichment as an alternative theory pursuant to Federal Rule of Civil Procedure 8.[50] Rule 8 allows a party to allege seemingly inconsistent alternative causes of action. Fed. R. Civ. P. 8(d)(3). Specifically, Rule 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." *Id.*

In *Walters v. MedSouth Rec. Mgmt., LLC*, 38 So. 3d 243, 244 (La. 2010), the Louisiana Supreme Court held the a plaintiff "failed to state a cause of action in unjust enrichment" when "the law provided plaintiff with another remedy." Additionally, the *Walters* court found that "[t]he mere fact that a plaintiff does not successfully pursue another available remedy does

---

[49]   R. Doc. 39-1 at 9; R. Doc. 38-1 at 14-15.
[50]   R. Doc. 41 at 19-21; R. Doc. 42 at 13-15.

not give the plaintiff the right to recover under the theory of unjust enrichment." *Id.* In other words, even though a plaintiff may not succeed when it pursues its other available remedies, there is no cause of action in unjust enrichment if such a remedy exists. *See Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 F. App'x 440, 443-44 (5th Cir. 2014) ("The important question is whether another remedy is available, not whether the party seeking a remedy will be successful."). Similarly, the U.S. Fifth Circuit, in *Bank of Abbeville & Tr. Co. v. Commonwealth Land Title Ins. Co.*, 201 F. App'x 988, 990-91 (5th Cir. 2006), held that, as a matter of substantive Louisiana law, a plaintiff was "not entitled to relief . . . under the theory of unjust enrichment" when it cannot prove "a lack of other remedy at law."

Nevertheless, Louisiana's federal district courts are divided on whether Rule 8 permits a plaintiff to plead unjust enrichment in the alternative. In *JP Mack Industries LLC v. Mosaic Fertilizer, LLC*, 970 F. Supp. 2d 516, 520-21 (E.D. La. 2013), the court granted a defendant's motion to dismiss an unjust enrichment claim because alternate remedies were available. The *JP Mack* court found that, under Louisiana law, unjust enrichment is "subsidiary," not "alternative." *Id.*; *see also Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 699-02 (W.D. La. 2014) (collecting cases and holding that unjust enrichment claims may not be pled in the alternative

when other remedies exist).  Other courts have found that "Louisiana law permits unjust enrichment to be pled in the alternative."  *Max Foote Constr. Co., L.L.C. v. MWH Constructors, Inc.*, No. 18-2584, 2018 WL 5297744, at *8 (E.D. La. Oct. 25, 2018) (citing *Carrier v. Bank of La.*, 702 So. 2d 648, 658 (La. 1996));[51] *see also Schott, Tr. for Est. of InforMD, LLC v. Massengale*, No. 18-759, 2019 WL 4738795, at *16 (M.D. La. Sept. 27, 2019) (finding that Rule 8(d)(3) permits a plaintiff to plead a claim for unjust enrichment under Louisiana law in the alternative).

The Court finds the Louisiana Supreme Court's *Walters* decision dispositive.  38 So. 3d at 244.  As a matter of substantive Louisiana law, a plaintiff's claim for unjust enrichment fails if another remedy exists at law. *Id.*  Here, plaintiff's unjust enrichment claim is based on the defendant's allegedly "unlawful acquisition, use and/or disclosure of Bureau Veritas' confidential information."[52]   The same alleged conduct is the basis of

---

[51]    Plaintiff cites *Max Foote* to support its argument that it may plead its unjust enrichment claim in the alternative.  But Judge Ashe, who decided *Max Foote*, later recognized the subsidiary nature of an unjust enrichment claim in *Marin Holdings Int'l Ltd. v. Frontera Offshore, Inc.*, No. 18-6490, 2019 WL 3306530, at *10 (E.D. La. July 23, 2019).  In *Marin Holdings*, Judge Ashe held that "the subsidiary claim for unjust enrichment must be dismissed" when the plaintiff "has other potential remedies at law."  *Id.*
[52]    R. Doc. 31 at 30, ¶ 102.

plaintiff's other claims in this litigation.[53]  The Court therefore finds that plaintiff cannot succeed in proving the fifth element of its claim for unjust enrichment: absence of another remedy at law.  The Court grants defendants' motions to dismiss this claim.

### C.    Unfair Trade Practices

In the amended complaint, Bureau Veritas alleges that defendants' trade secret misappropriation constitutes an unfair or deceptive act or practice in violation of LUPTA.  Cotecna challenges the LUPTA claim on the ground that, in its view, plaintiff did not adequately allege its trade secrets.

The Court has found that plaintiff plausibly alleged that the identified customer information, financial information, and some of its employee information qualify as trade secrets.  Further, Louisiana state courts have held that a LUPTA claim may be based on the same conduct as a trade secret misappropriation claim.  *Bihm v. Deca Sys., Inc.*, 226 So. 3d 466, 486, 491 (La. App. 1 Cir. 2017) (finding that a plaintiff could bring a claim under both LUPTA and LUTSA for misappropriation of trade secrets, including

---

[53]    Plaintiff argues that its unjust enrichment claim is based on defendants' use of plaintiff's confidential information while its other claims are based on use of its trade secrets.  But in its complaint, plaintiff defines its "confidential information and/or trade secrets" as the same five categories of information discussed previously.  R. Doc. 31 at 7-8, ¶ 16.  The Court finds this argument, which is unsupported by citation to authority, without merit.

customer lists); *see also Bernhard MCC, LLC v. Zeringue,* 303 So. 3d 372, 379 (La. App. 5 Cir. 2020), *writ denied,* 306 So. 3d 434 (La. 2020) (holding that plaintiff made a *prima facie* showing that defendant violated LUPTA by misappropriating confidential information). The Court finds that plaintiff has plausibly stated a claim under LUPTA for the defendants' alleged misappropriation of plaintiff's trade secrets.

Moreover, as part of its LUPTA claim, plaintiff alleges other conduct that may qualify as an unfair or deceptive act or practice. Specifically, plaintiff alleges that Nanoo breached her fiduciary duties, and improperly accessed Bureau Veritas' computer and network systems. Plaintiff also alleges that "Cotecna's management is aware of, encouraged, and/or engaged in" that conduct. *See Johnston v. Vincent,* No. 19-55, 2020 WL 2553177, at *13-14 (La. App. 3 Cir. 2020), *reh'g denied* (Oct. 21, 2020), *writ denied,* 310 So. 3d 182 (La. 2021) ("[A]nyone who conspires in the commission of an unfair trade practice is liable *in solido* for the resulting damages").

The alleged breach of fiduciary duties is conduct that falls under LUPTA's coverage. The U.S. Fifth Circuit has recognized that causes of action under LUPTA "often involve breaches of ethical standards arising from the employer-employee relationship." *Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1422 (5th Cir. 1993). Federal district courts applying Louisiana

23

law have found that "the question of breach of fiduciary duty or loyalty as an employee collapses into the question of whether the employee's actions constitute unfair trade practices." *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, 535 (E.D. La. 2007); *Ruby Slipper Cafe, LLC v. Belou*, No. 18-1548, 2019 WL 1254897, at *7 (E.D. La. Mar. 19, 2019); *see also Defcon, Inc. v. Webb*, 687 So. 2d 639, 643 (La. App. 2 Cir. 1997), ("A breach of fiduciary duty claim based upon the misappropriation of confidential information . . . may serve as a basis for relief under Louisiana's Unfair Trade Practices Act.").

Additionally, courts have found that the same conduct making up CFAA violations can be the basis for a LUPTA claim. *Pyramid Instrumentation & Elec. Corp. v. Hebert*, No. 17-1358, 2018 WL 1789325, at *5 (W.D. La. Mar. 14, 2018), *report and recommendation adopted*, No. 17-1358, 2018 WL 1788621 (W.D. La. Apr. 13, 2018) (finding that allegations to support a "viable" CFAA claim could also support a LUPTA claim); *see also Elliott Co. v. Montgomery*, No. 15-02404, 2016 WL 6301042, at *6 (W.D. La. Sept. 28, 2016), *report and recommendation adopted*, No. 15-2404, 2016 WL 6301106 (W.D. La. Oct. 26, 2016) (finding that a plaintiff plausibly pleaded a LUPTA claim based on alleged CFAA violations).

Because the conduct plaintiff points to in its amended complaint—misappropriation of trade secrets, breach of fiduciary duties, and violations of the CFAA—is cognizable under LUPTA, the Court finds that plaintiff has plausibly alleged its unfair trade practices claim.  Accordingly, the Court denies Cotecna's motion to dismiss this claim.  Additionally, having found that plaintiff has stated a claim under LUPTA, the Court denies defendant's alternative motion for a more definite statement under Rule 12(e).  *See Keith v. J.D. Byrider Sys., LLC,* No. 14-1317, 2015 WL 3539555, at *13 (N.D. Tex. June 5, 2015) ("[T]he court's conclusion that [plaintiff] has pleaded a plausible . . . claim implicitly defeats the contention that the claim is so vague or ambiguous that defendants cannot reasonably prepare a responsive pleading.").

## D.   Breach of Contract

In its amended complaint, plaintiff alleges that Nanoo breached a confidentiality agreement and a non-solicitation agreement.[54]  Nanoo moves to dismiss the claim as to the alleged breach of the non-solicitation agreement, arguing that the non-solicitation clause is unenforceable under Louisiana law.[55]

---

[54]   *Id.* at 18-21, ¶¶ 45-53.

[55]   Nanoo does not address plaintiff's breach of contract claim relating to her alleged breach of a confidentiality agreement.

The Louisiana Supreme Court has recognized that "Louisiana has long had a strong public policy disfavoring [restrictive covenants] between employers and employees." *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So. 2d 294, 298 (La. 2001); *see also Brock Servs., L.L.C. v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019) ("Restrictive covenants are unfavored in Louisiana and are narrowly and strictly construed."). This policy is expressed in La. Rev. Stat. § 23:921, which provides that "[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void." The statute provides the following exception governing employers and employees:

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

La. Rev. Stat. § 23:921(C). For the exception to apply, the agreement must: (1) have a two-year maximum duration; (2) have a specific list of the areas in which the former employee is restrained from competing with the employer's business; and (3) apply to competition between the former employee and

26

employer. *Env't Safety & Health Consulting Servs., Inc. v. Fowler*, No. 2019-0813, 2020 WL 1173587, at *5 (La. App. 4 Cir. Mar. 11, 2020*), writ denied*, 302 So. 3d 528 (La. 2020). Non-solicitation agreements "are separate and distinct from" non-competition agreements, but "the requirements of La. R.S. 23:921 apply to both." *Wechem, Inc. v. Evans*, 274 So. 3d 877, 885 (La. App. 5 Cir. 2019), *writ denied*, 280 So. 3d 600 (La. 2019). Nanoo argues that the agreement exceeds the geographic scope permitted under La. Rev. Stat. § 23:921(C), and that it is unenforceable because it prohibits solicitation of more than Bureau Veritas' customers.

### 1.   *The Non-Solicitation Agreement*

The restrictions at issue are set forth in Section 2(a) of Nanoo's "Confidentiality, Non-Solicitation, and Assignment of Rights Agreement."[56] Section 2(a) prohibits Nanoo from soliciting from or interfering with plaintiff's business contacts "for a period of six (6) months immediately following the date of Employee's termination from employment for any reason (the **"*Restricted Period*"**), other than in Connection with Employee's duties for the company[.]"[57]

---

[56]   R. Doc. 31 at 19, ¶ 47; R. Doc. 31-2 at 3-4.
[57]   *Id.* at 4 (emphasis in original).

i.   Geographic scope

The non-solicitation provision contains three subsections.[58]  By their terms, the subsections apply depending on where Nanoo lived during the six-month "Restricted Period."  During that period, if Nanoo lived in any state other than Louisiana or Oklahoma, subsection 2(a)(i) would apply. Subsection 2(a)(ii) would apply if Nanoo lived in Louisiana, and 2(a)(iii) if she lived in Oklahoma.  Plaintiff alleges that Nanoo resides in Louisiana,[59] and Nanoo does not contend that she lived elsewhere during the "Restricted Period."

The Louisiana provision, subsection 2(a)(ii), defines the "Restricted Area" as "Calcasieu Parish, East Baton Rouge Parish, East Feliciana Parish, Jefferson Parish, Jefferson Davis Parish, Lafayette Parish, Plaquemines Parish, St. Charles Parish, and St. James Parish."[60]  Nanoo does not contend that Bureau Veritas does not do business in these areas, or that the geographic scope set out in subsection 2(a)(ii) exceeds what is permitted by § 23:921(C).

---

[58]    *Id.*

[59]    R. Doc. 31 at 4, ¶ 7.

[60]    R. Doc. 31-2 at 4.

28

Instead, Nanoo relies on subsections 2(a)(i) and (iii).[61] Unlike the Louisiana provision, these subsections are not geographically limited.[62]  But Nanoo fails to explain how these provisions—which are conditioned on her living outside of Louisiana—apply.    Moreover, the agreement has reformation and severability clauses, which provide:

> 6.    **Reformation**. The Company and Employee agree that in the event any of the terms, provisions, covenants, or restrictions contained in this Agreement, or any part thereof, shall be held by any court of competent jurisdiction to be effective in any particular area or jurisdiction only if said term, provision, covenant, or restriction is modified to limit its duration or scope, then the court shall have such authority to so reform the term, provision, covenant, or restriction and the parties hereto shall consider such term, provision, covenant, or restriction to be amended and modified with respect to that particular area or jurisdiction so as to comply with the order of any such court and, as to all other jurisdictions, the term, provision, covenant, or restriction contained herein shall remain in full force and effect as originally written.[63]

> 7.    **Severability**. In the event any court of competent jurisdiction or any foreign, federal, state, county, or local government or any other governmental regulatory or administrative agency or authority holds any provision of this Agreement to be invalid, illegal, or unenforceable, such invalid, illegal, or unenforceable portion(s) shall be limited or excluded from this Agreement to the minimum extent required, and the remaining provisions shall not be affected or invalidated and shall remain in full force and effect.[64]

---

[61]    *See id.*
[62]    *Id.*
[63]    *Id.* at 5-6.
[64]    *Id.* at 6.

The Fifth Circuit has found that "if [a non-compete] provision is geographically overbroad, the court may rely on a severability provision to reform the overbroad provision and 'excise the offending language.'" *Brock Servs., L.L.C.*, 936 F.3d at 296-97. To the extent the non-Louisiana provisions of the contract exceed the geographic scope permitted by § 23:921(C), the Court excises that language from the agreement. The Court finds that the agreement satisfies La. Rev. Stat. § 23:921(C)'s geographic limitation requirement.

### ii.   Customers

The agreement prohibits Nanoo from "solicit[ing] business from . . . or attempt[ing] to solicit from" several types of entities that it defines as "Customers."[65] Specifically, the non-solicitation agreement applies to:

> any actual or prospective customer, service provider, vendor, or supplier of the Company or any affiliate of the Company with whom the Company or any affiliate did business or who the Company or any affiliate solicited with the eighteen (18) months prior to Employee's termination from employment with the Company, and (1) who or which the Employee contacted, called on, serviced, or did business with, on behalf of the Company or any affiliate of the Company during Employee's employment with the Company, or (2) about whom the Employee received Confidential Information (collectively, **"*Customers*"**).[66]

---

[65]    *Id.* at 4.

[66]    *Id.*

The covenant further states that its "restrictions apply only to business which is in the scope of services or products that are competitive with those provided or offered by the Company or any affiliate of the Company for whom Employee provided services."[67]

This language plainly exceeds what is permitted by § 23:921(C), which allows an employee to agree only to refrain from "soliciting *customers* of the employer . . . ." (emphasis added).  Here, the relevant contractual provision goes beyond the scope of La. Rev. Stat. § 23:921(C) in two ways.  First, it is not limited to plaintiff's actual "customers," but extends to "prospective customer[s]," "service provider[s], vendor[s]" and "supplier[s]."[68]  Second, it bars Nanoo from soliciting not only Bureau Veritas' business contacts, but also contacts of plaintiff's affiliates.[69]  *But see Austin v. Indus. Oils Unlimited, L.L.C.*, No. 17-1625, 2020 WL 5834799, at *2 (W.D. La. Sept. 30, 2020) (upholding a non-solicitation provision that applied to "affiliated" entities on other grounds).  Louisiana courts have repeatedly held that "[t]he exceptions set forth in La. R.S. 23:921(C) must be strictly construed, and agreements confected pursuant to this provision must strictly comply with its requirements."  *Restored Surfaces, Inc. v. Sanchez*, 82 So. 3d 524, 528

---

[67]   *Id.*
[68]   *Id.*
[69]   *Id.*

(La. App. 5 Cir. 2011); *see also H.B. Rentals, LC v. Bledsoe*, 24 So. 3d 260, 263 (La. App. 3 Cir. 2009) (finding a non-solicitation provision overbroad when it applies to "potential" customers). Thus, the agreement is overbroad.

In *Causin, L.L.C. v. Pace Safety Consultants, LLC*, No. 18-0706, 2019 WL 385206, at *16 (La. App. 4 Cir. 2019), *writ denied*, 271 So. 3d 203 (La. 2019), the Louisiana Fourth Circuit held that a non-compete agreement was enforceable after the Court excised reference to "subsidiaries" and "affiliates" in the agreement. Similarly, in *Henderson Implement Co. v. Langley*, 707 So. 2d 482, 485-86 (La. App. 3 Cir. 1998), the Louisiana Third Circuit excised references to subsidiaries and affiliates in a non-compete agreement. Both the *Henderson* and the *Causin* court reasoned that "[c]ourts are free to recognize, by interpretation of the will of the parties, that the provision inserted in the agreement is only an accessory clause to which the agreement was not subject for its existence." *Id.* In such cases, the Court may delete the offending provision, and the remainder of the agreement stands. *Id.* These courts reformed overbroad noncompete agreements by excising offending provisions even without relying on reformation or severability provisions. *Id.* (noting that the Court did "not

utilize[]" a severability clause); *Henderson*, 707 So. 2d at 485 (noting the absence of a severability clause).

Based on these authorities, and the reformation and severability provisions of the agreement, cited earlier, the Court excises the references to "affiliates" and to "prospective customer[s]," "service provider[s]," "vendor[s]," and "supplier[s]" from the agreement. The non-solicitation provision is enforceable only as to Nanoo's solicitation of plaintiff's actual customers, as permitted by La. Rev. Stat. § 23:921(C). Because the non-solicitation clause, as reformed, is enforceable, the Court denies Nanoo's motion to dismiss the breach of contract claim.

### E.    Computer Fraud and Abuse Act

Plaintiff brings a claim against Nanoo for violating § 1030(a)(4) of the CFAA.[70]  18 U.S.C. § 1030(a)(4). Under § 1030(a)(4), plaintiff must plead that Nanoo "(1) accessed a "protected computer," (2) without authorization or exceeding such authorization that was granted, (3) "knowingly" and with "intent to defraud," (4) thereby furthering the intended fraud and obtaining anything of value, and (5) causing a loss to one or more persons during any one-year period aggregating at least $5,000 in value.   18 U.S.C. §§ 1030(a)(4), (g); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th

---

[70]    R. Doc. 31 at 26-27, ¶¶ 78-86.

Cir. 2009); *Absolute Energy Sols., LLC v. Trosclair*, No. 13-3358, 2014 WL 360503, at *2 (S.D. Tex. Feb. 3, 2014).

Nanoo challenges defendant's allegations regarding the second element—that she exceeded her authorized access when she misappropriated plaintiff's information.[71]  Nanoo argues that an employee who accesses an employer's information while employed, and later misappropriates it for his or her own benefit, has not exceeded authorized access.  Plaintiff's argument is consistent with Ninth Circuit precedent.  For example, in *LVRC Holdings LLC v. Brekka*, 581 F.3d at 1133, the Ninth Circuit interpreted the term "exceeds authorized access" to apply when a person "has permission to access the computer, but accesses information on the computer that the person is not entitled to access."  And, in *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012), the court held that "the phrase 'exceeds authorized access' in the CFAA does not extend to violations of use restrictions."

But in *United States v. John*, 597 F.3d 263, 272 (5th Cir. 2010), the Fifth Circuit expressly declined to adopt the Ninth Circuit's approach.  The *John* court held that "the concept of 'exceeds authorized access' may include exceeding the purposes for which access is 'authorized.'"  *Id.*  In other words,

---

[71]  R. Doc. 38-1 at 12-14.

"[a]ccess to a computer and data that can be obtained from that access may be exceeded if the purposes for which access has been given are exceeded." *Id.* Applying *John*, courts have found that an individual may exceed authorized access when he or she uses his or her access to information in violation of a confidentiality agreement. *Associated Pump & Supply Co., LLC v. Dupre*, No. 14-9, 2014 WL 1330196, at \*6 (E.D. La. Apr. 3, 2014); *Total Safety v. Rowland*, No. 13-6109, 2014 WL 6485641, at \*21 (E.D. La. Nov. 18, 2014).

In short, under *John*, the Fifth Circuit recognizes that an employee may exceed authorized access when he or she exceeds the purposes for which the employer gives authorization. 597 F.3d at 272. In its amended complaint, plaintiff alleges that Nanoo had authority to "access and use" Bureau Veritas' "laptop and network shared drive to perform her job responsibilities," not "to abscond with [plaintiff's] trade secrets and confidential information."[72] It alleges that Nanoo exceeded her authorized access when she accessed plaintiff's laptop and computer systems to instead "save and copy, for her own personal use and the use by Cotecna" plaintiff's trade secrets and confidential information.[73] Under *John*, these allegations are sufficient to

---

[72]   R. Doc. 31 at 26, ¶ 79.
[73]   *Id.* at 26-27, ¶ 81.

state that Nanoo exceeded her authorized access.  *Id.*  The court denies Nanoo's motion to dismiss this claim.

### F.    Conversion

Courts interpreting Louisiana law have held that, as a general matter, incorporeal intangible property cannot be the subject of a conversion action. *See All Green Corp. v. Wesley*, No. 20-0121, 2021 WL 314290, at *5 (W.D. La. Jan. 29, 2021); *BASF Agrochemical Prod. v. Unkel*, No. 05-1478, 2006 WL 3533133, at *7 (W.D. La. Dec. 7, 2006) (finding that a claim for conversion for using patented rice seed "is outside the scope of Louisiana conversion law").   Nanoo moves to dismiss plaintiff's conversion claim against her, arguing that the allegedly converted property—the confidential information stored on Nanoo's hard drives[74]—is incorporeal.

In *South Central Bell Telephone Co. v. Barthelemy*, 643 So. 2d 1240, 1246 (La. 1994), the Louisiana Supreme Court held that digital information, there software, is "tangible" or "corporeal."  The court reasoned that digital information "is not merely knowledge, but rather is knowledge recorded in a physical form which has physical existence, takes up space on [a] tape, disc, or hard drive, makes physical things happen, and can be perceived by the senses."  *Id.*  Thus, under Louisiana law, digital information recorded on

---

[74]    R. Doc. 31 at 30, ¶ 106.

media, such as a hard drive, "is not merely an incorporeal idea to be comprehended . . . ." *Id.* at 1247.  Instead, it has "physical existence." *Id.*

In its complaint, plaintiff alleges that the digital information Nanoo allegedly converted was stored on Nanoo's hard drives.  Under the standard set out in *Barthelemy*, this information is corporeal property.  *Id.* at 1246-47; *see also First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.,* No. 15-638, 2016 WL 5869787, at *6 (E.D. La. Oct. 7, 2016) (*holding that "configuration tables, customer data, and related account information" for software programs "are tangible items under Louisiana law" because they were "stored on a disc, server, or hard drive"); *cf. CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.,* No. 2019-731, 2019 WL 2865359, at *3 & n.3 (La. App. 1 Cir. 2019), *writ denied*, 282 So. 3d 1071 (La. 2019) (recognizing that software can be tangible property when it is recorded in physical form, but finding that plaintiff had failed to introduce evidence at summary judgment to show that allegedly converted information had physical form).  Here, just as the software in *Barthelemy* was "recorded in physical form" on magnetic tapes, the digital information at issue in this case was allegedly stored on hard drives.  Thus, under Louisiana law, the information on Nanoo's hard drives are corporeal property.

In addition, at least one federal district court has held that, under Louisiana law, digital information may be the basis for a conversion action when it is of a type that is "capable of being merged into a physical document." *All Green Corp. v. Wesley*, No. 20-0121, 2021 WL 314290, at *5 (W.D. La. Jan. 29, 2021).  Here, the type of information that plaintiff points to in its amended complaint, including customer lists, financial information, and Outlook files, are capable of being merged into a physical document.

Under these standards, the Court finds that plaintiff has plausibly alleged that Nanoo converted tangible property—the information stored on her hard drives.  The Court denies Nanoo's motion to dismiss this claim.

## III.  CONCLUSION

Accordingly, the Court GRANTS defendants' motions to dismiss IN PART.  The Court DISMISSES plaintiff's claim for unjust enrichment, and DISMISSES IN PART plaintiff's claims for trade secret misappropriation under the DTSA and LUTSA.  As to the remainder of plaintiff's claims addressed in the motions, the Court DENIES the defendants' motions. Additionally, Cotecna's motion for a more definite statement is DENIED.

The Court ORDERS that plaintiff has leave to amend its complaint to remedy the deficiencies discussed in this Order.  Plaintiff must file its second amended complaint within fourteen (14) days from the date of this Order.


New Orleans, Louisiana, this __26th__ day of May, 2021.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE