UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BUREAU VERITAS COMMODITIES                    CIVIL ACTION
AND TRADE, INC.

VERSUS                                              NO. 20-3374

RENISHA NANOO, ET AL.                        SECTION "R" (4)

## ORDER AND REASONS

Before the Court is defendant Renisha Nanoo's partial motion to dismiss plaintiff's second amended complaint[1] under Federal Rule of Civil Procedure 12(b)(6).[2]  Plaintiff Bureau Veritas Commodities and Trade, Inc. ("Bureau Veritas") opposes the motion.[3]  For the following reasons, the Court denies defendant's motion.

## I.    BACKGROUND

This claim arises from allegedly anti-competitive trade practices.  In its second amended complaint, Bureau Veritas alleges that its operations include a "metals and minerals" ("M&M") inspection, sampling, testing, and

---

[1]    R. Doc. 56.
[2]    R. Doc. 61.
[3]    R. Doc. 67.

certification business.[4]   Plaintiff alleges that, over the course of several months, a number of high-level employees in its M&M division, including defendant Nanoo, colluded with Cotecna Inspection, Inc. ("Cotecna") to steal Bureau Veritas's trade secrets and employees to develop a competing M&M business.[5]   Plaintiff alleges that, from February to June 2020, all but one of its M&M division's senior managers resigned, opened a competing lab for Cotecna, and pursued Bureau Veritas's customers.[6]   Plaintiff alleges that Nanoo was "second-in-command" in its M&M division, and was responsible for operations, finances, and management of the "Solid Fuels" operations and laboratories, which were centrally located in Marrero, Louisiana.[7]

Before leaving Bureau Veritas, Nanoo allegedly gathered Bureau Veritas's confidential information by connecting two personal external hard drives to her Bureau Veritas laptop.[8]   A forensic examination allegedly showed that at least one of the drives contained customer and contractor lists, pricing information, financial information, laboratory information, and an archive of Nanoo's Outlook files.[9]   Nanoo allegedly kept both hard drives

---

4    R. Doc. 56 ¶ 1.
5    *Id.* ¶ 2.
6    *Id.* ¶¶ 2-3.
7    *Id.* ¶¶ 20-21.
8    *Id.* ¶ 4.
9    *Id.* ¶¶ 4, 43-44.

and the information they contained after leaving her employment with plaintiff.[10]   Once at Cotecna, Nanoo allegedly began soliciting Bureau Veritas's M&M customers.[11]

Cotecna and Nanoo filed motions to dismiss plaintiff's original complaint.[12]   In response, plaintiff filed an amended complaint.[13]   On May 26, 2021, the Court granted in part and denied in part Nanoo and Cotecna's motions to dismiss under Rule 12(b)(6).[14]   The Court also granted leave for plaintiff to amend its complaint to remedy any deficiencies.[15]   Plaintiff filed its second amended complaint.[16]   Nanoo now moves to dismiss plaintiff's claims for (1) misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA"), and the Louisiana Uniform Trade Secrets Act, La. Rev. Stat. § 51:1431, *et seq.* ("LUTSA"), to the extent they are based on its employee lists, compilations of job duties and responsibilities, contractor and vendor information, and laboratory information, and (2) violations of the Computer Fraud and Abuse Act

---

[10]    *Id.* ¶ 4.
[11]    *Id.* ¶ 5.
[12]    *See* R. Docs. 19, 21.
[13]    *See* R. Doc. 31.
[14]    R. Doc. 54.
[15]    *Id.* at 18.
[16]    R. Doc. 56.

("CFAA").[17]  Plaintiff opposes the motion.[18]  The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the

---

[17]     R. Doc. 61.
[18]     R. Doc. 67.

pleadings and are central to a plaintiff's claims.  *Id.*  "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'"  *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (quoting *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## III.  DISCUSSION

### A.  Misappropriation of Trade Secrets

Nanoo moves to dismiss plaintiff's trade secret misappropriation claims on the grounds that the alleged trade secrets are not adequately identified in plaintiff's second amended complaint.[19]  To state a claim under the DTSA, Bureau Veritas must allege: (1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) the trade secret's relation to a good or service used or intended for use in interstate or foreign commerce.  *Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 517 (E.D. La. 2018) (citing 18 U.S.C. § 1836(b)(1)).  Similarly, to recover damages under the LUTSA, Bureau Veritas must prove: (1) the existence of a trade secret; (2) misappropriation of the trade secret by another; and (3) actual loss caused by the misappropriation.  *Source Prod. & Equip. Co., Inc.*

---

[19]     R. Doc. 61.

*v. Schehr*, No. 16-17528, 2017 WL 3721543, at *5 (E.D. La. Aug. 29, 2017)

(citing La. Rev. Stat. § 51:1433).  At issue in defendant's motions is the first

element: whether plaintiff has alleged the existence of a trade secret.

> The DTSA, which was enacted in 2016, defines "trade secret[s]" as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--

> (A) the owner thereof has taken reasonable measures to keep such information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).  LUTSA's definition is substantially the same.  *See* La.

Rev. Stat. § 51:1431(4).

"[T]o allege a trade secret, the plaintiff must 'describe the subject

matter of the trade secret with sufficient particularity *to separate it from*

*matters of general knowledge in the trade* or *of special persons who are*

*skilled in the trade*, and to permit the defendant to ascertain at least the

boundaries within which the secret lies.'"  *Am. Biocarbon, LLC v. Keating*,

No. 20-00259, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020) (emphasis

6

added) (quoting *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020)).  Courts generally find that pleadings are inadequate when the alleged trade secrets are identified only by category or broad conclusory statements.  *See Intrepid Fin. Partners, LLC v. Fernandez*, No. 20-9779, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) ("Plaintiff merely references categories of information concerning its clients and ordinary business operations, and conclusorily alleges that such information is not readily available and affords [plaintiff] economic value such that it should be deemed a trade secret.").  In other words, a plaintiff may not "set out its purported trade secrets in broad, categorical terms," in a way that is merely "descriptive of the types of information that generally may qualify as protectable trade secrets." *Vendavo, Inc. v. Price f(x) AG*, No. 17-6930, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).  Instead, a plaintiff must identify the "particular trade secrets [that it] has a basis to believe actually were misappropriated." *Id.*

Here, defendant challenges[20] whether plaintiff has sufficiently alleged that the following categories of information, as described in the second amended complaint, are protectable trade secrets:

---

[20]   *Id.* at 1 (requesting that the Court dismiss plaintiff's claims against her for "misappropriation under the DTSA and LUTSA to the extent they are based on Plaintiff's 'employee lists,' 'compilations of job duties and

(2) protected employee information (employee lists containing contact information; compilations of job duties and responsibilities tailored to customer needs . . . .)
. . .

(4) protected contractor and vendor information (preferred vendor sources for products; vendor purchasing histories; compilations of vendor pricing, rates, and services with relationship discounts; vendor lists containing contact information for key decision-makers; vendor preferences; contractor lists containing contact information; preferred contractors for certain geographic regions or customers; contractor pricing, rates, discounts, and mark-ups; and specialized services performed by contractors); and

(5) protected laboratory technology (equipment preferences, quantities, inventory, and prices tailored to historical demand from Bureau Veritas'[s] customers; laboratory designs, depreciation, and expenditures to optimize financial results, performance, and profitability; operating procedures and techniques tailored to historical demand from Bureau Veritas'[s] customers; and research and development).[21]

The Court finds that plaintiff has plausibly alleged that its employee lists, compilations of job duties and responsibilities, protected contractor and vendor information, and protected laboratory technology are trade secrets.

In *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003), the Fifth Circuit, applying Texas law,[22] considered three factors in

---

responsibilities,' 'contractor and vendor information,' and 'laboratory information'").

[21] R. Doc. 56 ¶¶ 17-18.

[22] The definitions of "trade secret" contained in the DTSA, 18 U.S.C. § 1839(3), and the LUTSA, La. Rev. Stat. § 51:1431(4), are substantively

determining whether a customer list was a trade secret: (1) what steps, if any, an employer has taken to maintain the confidentiality of its information, (2) whether a departing employee has acknowledged that the information is confidential, and (3) whether the information is readily ascertainable. District courts have applied the same analysis to other types of information, including employee and contractor lists. *See, e.g.*, *GovernmentCIO, LLC v. Landry*, No. 20-949, 2021 WL 1102333, at *4-5 (D. Md. Mar. 22, 2021) (employee, contractor, and subcontractor contact information); *Raybourne & Dean Consulting, Ltd. v. Metrica, Inc.*, No. 14-918, 2016 WL 7497587, at *19-22 & n.258 (W.D. Tex. Feb. 19, 2016), *report and recommendation adopted*, No. 14-918, 2016 WL 7496197 (W.D. Tex. Mar. 10, 2016), *aff'd*, 682 F. App'x 349 (5th Cir. 2017) (internal list of company employees, internal organization chart, internal operating procedures, and supplier lists). The Court therefore applies these three factors to assess plaintiff's trade secret allegations.

---

the same as the definition in the Texas Uniform Trade Secret Act. Tex. Civ. Prac. & Rem. Code § 134A.002(6).

9

### 1.  Employee Lists

Plaintiff's second amended complaint alleges that its "employee lists containing contact information" constitute cognizable trade secrets under both the federal and state statutes.[23]

First, the Court finds that plaintiff has sufficiently pled that it kept its employee lists private and required its employees, among other measures,[24] to sign a confidentiality agreement that defined "confidential information" to include "[e]mployee lists, employee salary information, and other nonpublic information regarding [plaintiff's] personnel."[25]  Second, plaintiff has shown that Nanoo acknowledged that employee lists were confidential by signing that confidentiality agreement.[26]

Third, plaintiff represents that its employee lists include more than just the identity of its employees, but also include non-public information, such as the employee's contact information.   Courts have recognized that compiled lists of a company's employee contact information are not readily ascertainable.  *See Select Energy Servs., Inc. v. Mammoth Energy Servs.,* No. 19-86, 2019 WL 1434586, at *5 (W.D. Okla. Mar. 29, 2019) ("[T]he fact

---

[23]    R. Doc. 56 ¶ 17.

[24]    *See id.* ¶ 24.

[25]    R. Doc. 56-1 at 2.

[26]    *Id.* at 2-3.

that an enterprising individual could discover the identity of certain employees does not negate the trade secret value of an employee list, which, like a customer list, is likely to contain contact information and other information not readily available."); *360 Mortgage Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. 14-847, 2016 WL 900577, at *4 (W.D. Tex. Mar. 2, 2016) ("[E]ven if the Broker List is readily available, it may be protected as a trade secret given the difficulty and expense of compiling the information." (citing *Zoecon Indus. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983))). The Court thus determines that plaintiff has sufficiently alleged that its "employee lists *containing contact information*"[27] include information that is not readily ascertainable.[28]

In reaching its decision, the Court rejects defendant's argument that because employee contact information is readily ascertainable through "a telephone directory," such information cannot constitute a protectable trade secret.[29]  Defendant relies on *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521 (E.D. La. 2007), which she contends "recognized

---

[27]   R. Doc. 56 ¶ 17 (emphasis added).
[28]   This Court was previously unable to determine whether plaintiff's bare assertion of "employee lists" in its amended complaint contained only readily ascertainable information about the identities and job titles of its employees.  R. Doc. 54 at 15.
[29]   R. Doc. 61-1 at 7.

that the fact that telephone numbers or contact information could be readily ascertained 'through a telephone directory . . . would exclude the information from the protections of the Trade Secrets Act.'"[30]

*Restivo* is neither controlling nor persuasive here.  In *Restivo*, plaintiff sought summary judgment on defendant's LUTSA counterclaim, arguing that he "relied on his memory and the telephone directory" to contact the defendant's patients and referral sources.  *Id.* at 527, 533-54.  The Court held that that plaintiff did not violate LUTSA because defendant's list of referral sources and their contact information were "readily available in the telephone directory," and because "it would seem that there are a finite number of referral sources doing business related to prosthetic devices in St. Tammany Parish."  483 F. Supp. 2d at 533-34.  Unlike the "finite number of referral sources" in a single parish, *id.*, Bureau Veritas's employee lists included its inspectors, samplers, technicians, chemists, auditors, and managers, who were employed across several states and laboratories.[31]  This distinction is notable because without plaintiff's consolidated lists, it is unlikely that defendants could have readily ascertained the contact information and employment status of key Bureau Veritas employees.

---

[30]   *Id.* (quoting *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, 533-34 (E.D. La. 2007)).

[31]   *See* R. Doc. 56 ¶¶ 13, 15-16, 21.

Defendant further argues that plaintiff has not alleged that its employee lists have any actual or potential independent economic value.[32] The Court rejects this argument because plaintiff's second amended complaint alleges that the "detailed employee lists essentially provide[d] Cotecna with a rolodex of Bureau Veritas'[s] employees and their contact information, allowing Cotecna to seamlessly recruit and solicit employees."[33] Plaintiff's assertion plausibly demonstrates how its employee lists have independent economic value, because the lists saved Cotecna "significant time and money by not having to develop its own recruiting strategies." *GovernmentCIO*, 2021 WL 1102333 at *5.

The Court finds that plaintiff has sufficiently alleged the existence of a trade secret in its employee lists containing contact information. Accordingly, the Court denies defendant's motion to dismiss the trade secret misappropriation claims as to this alleged trade secret.

       2.     *Compilations of Job Duties and Responsibilities*

Nanoo also seeks dismissal of plaintiff's trade secret allegation as to its "compilations of job duties and responsibilities tailored to customer

---

[32]    R. Doc. 61-1 at 7.
[33]    R. Doc. 67 at 20.

needs."[34]   As with the employee lists, the Court finds that plaintiff has sufficiently pled that it took steps to keep its compilation of job duties and responsibilities confidential, and that Nanoo acknowledged that confidentiality.  Plaintiff specifically relies on the confidentiality agreement Nanoo signed, which covered as confidential all "other nonpublic information regarding [plaintiff's] personnel," and any information "relating to [plaintiff's] internal operations . . . [and] process descriptions."[35]

Plaintiff has also plausibly alleged that its "compilations of job duties and responsibilities tailored to customer needs"[36] include information that is not readily ascertainable.[37]  Plaintiff emphasizes that this information is especially unknown to the general public and to companies like Cotenca who are not "primary player[s] in the solid fuels testing, inspection, and certification business in North America."[38]

To the extent that plaintiff contends that compilations of job duties and responsibilities reflect "individual customer preferences," or "specialized knowledge of the customer's operations and needs," the Court finds that such information is "not readily available."  *See N. Atl. Instruments, Inc. v. Haber*,

---

34   R. Doc. 61-1 at 8; R. Doc. 56 ¶ 17.
35   R. Doc. 56-1 at 2.
36   R. Doc. 56 ¶ 17.
37   R. Doc. 67 at 22.
38   R. Doc. 67 at 22; R. Doc. 56 ¶ 31.

188 F.3d 38, 46 (2d Cir. 1999) (internal quotation marks and citations omitted).  Furthermore, in similar circumstances, courts have held that a company's internal employee duties and operating procedures are not readily ascertainable.  *See, e.g.*, *Nat'l Info. Ctr., Inc. v. Am. Lifestyle*, No. 84-5298, 1985 WL 4035, at *2 (E.D. La. Aug. 25, 1985) ("[T]he copied information regarding the structure of plaintiff's operations, and its internal procedures, do constitute information not generally or readily ascertainable by persons who lack knowledge of plaintiff's operations."); *GovernmentCIO*, 2021 WL 1102333, at *4-5 (finding that plaintiff had sufficiently alleged the existence of a trade secret over employee information, including its "staffing plans and methodologies").

Bureau Veritas further represents that defendants are using its trade secrets, including its compilations of job duties tailored to specific customers, to solicit plaintiff's employees and customers.[39]  Such a compilation, plaintiff asserts, saved defendants significant time and money that they would otherwise have to expend in creating their own internal structure and recruitment strategies.[40]  *See id.* at *5; *cf.  Intertek USA Inc. v. AmSpec, LLC*, No. 14-6160, 2014 WL 4477933, at *5 (N.D. Ill. Sept. 11, 2014)

---

[39]     R. Doc. 56 ¶ 68.
[40]     R. Doc. 67 at 22.

("And although [defendant] may have been able to obtain similar information by communicating with [plaintiff's] customers, . . . that process would have taken time, effort, and expense.").

Nanoo contends that plaintiff's compilations of job duties cannot be trade secrets because plaintiff "identif[ies] the job duties of certain employees in its Second Amended Complaint."[41]  The Court is unpersuaded by this argument, and finds that there is a significant difference between plaintiff's alleged detailed compilations of its employee's duties and responsibilities, tailored to customer needs, and plaintiff's brief descriptions in its second amended complaint, which lists the duties of a few of its inspectors, samplers, and chemists.[42]

For these reasons, the Court determines that plaintiff has sufficiently alleged the existence of a trade secret in the compilation of its employees' job duties and responsibilities.

---

[41]   R. Doc. 61-1 at 8.

[42]   R. Doc. 56 ¶ 15 ("Inspectors are responsible for supervising sample preparation at third party sites for laboratory analysis.  Samplers are responsible for utilizing their knowledge to physically collect and prepare samples of products and raw materials for laboratory analysis. Chemists are responsible for utilizing their expertise in analytical techniques, such as fire assay and gravimetric analysis, to measure the weight and purity of various metals.").

### 3.   *Contractor and Vendor Information*

The Court previously found that plaintiff's amended complaint failed to allege that Nanoo acknowledged the confidentiality of plaintiff's vendor and contractor information, and did not plausibly allege that this information was not readily ascertainable.[43]  The Court finds that plaintiff has sufficiently cured both of these deficiencies in its second amended complaint.

As to Nanoo's acknowledgment of confidentiality, plaintiff represents that Nanoo signed not only the previously discussed confidentiality agreement, but also a "Confidentiality, Non-Solicitation, and Assignments of Rights Agreement."[44]  By signing the confidentiality, non-solicitation, and assignment of rights agreement, Nanoo agreed not to "directly or indirectly publish or disclose any Confidential Information of [Bureau Veritas] or any of its affiliates, that [Bureau Veritas] or any of its affiliates disclosed or made available to [Nanoo] in the course of [her] employment with [Bureau Veritas]."[45]  The agreement in turn defines "[c]onfidential [i]nformation" as including, among other things, "vendor lists, vendor preferences, supplier

---

[43]   R. Doc. 54 at 11-12, 15-16.

[44]   R. Doc. 56 ¶ 28.

[45]   R. Doc. 56-2 at 2.

lists, supplier preferences, and other business arrangements."[46]   The agreement, signed by Nanoo,[47] plainly identifies contractor and vendor information as confidential.  Accordingly, the Court finds that plaintiff has sufficiently alleged that Nanoo acknowledged the confidentiality of this purported trade secret.

Additionally, plaintiff's second amended complaint alleges that its contractor and vendor information is not readily accessible.[48]   In some circumstances, vendor lists may constitute trade secrets.  *See, e.g.*, *Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*, 680 F. Supp. 2d 830, 843 (E.D. Mich. 2010) (finding that vendor information such as "knowledge of which vendors are the best sources for particular products" may constitute a trade secret); *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 n.4 (C.D. Cal. 2009) (noting that "vendor lists[] and pricing information are often determined to be trade secrets"); *Select Energy Servs.*, 2019 WL 1434586, at *5 (holding that "business plans, pricing data, customer lists, *independent contractor lists*, employee lists, *vendor/supplier lists*. . . ha[d] been sufficiently plead[ed] as trade secrets" (emphasis added)).

---

[46]   *Id.*
[47]   *Id.* at 6.
[48]   R. Doc. 56 ¶ 14.

Here, plaintiff lists "vendor and contractor information," and several sub-categories of information, including:

> preferred vendor sources for products; vendor purchasing histories; compilations of vendor pricing, rates, and services with relationship discounts; vendor lists containing contact information for key decision-makers; vendor preferences; contractor lists containing contact information; preferred contractors for certain geographic regions or customers; contractor pricing, rates, discounts, and mark-ups; and specialized services performed by contracts.[49]

The Court finds that plaintiff has sufficiently explained how its vendor and contractor knowledge are not readily ascertainable, and instead constitute specialized business knowledge developed by plaintiff over the years.[50]  The information plaintiff presents as its purported trade secret is not just the names of vendors and contractors that would be generally known in the industry.  Instead, the information plaintiff points to—including its preferred vendors and contractors for certain products and geographic areas, its purchasing history with those vendors, vendor prices and rates, and lists with contact information for key decision-makers—has frequently been recognized by courts as trade secrets.  *See, e.g.*, *Giasson*, 680 F. Supp. 2d at 843 ("Plaintiffs produced evidence that their vendor trade secrets are not

---

[49]    *Id.* ¶ 18.
[50]    *Id.* ¶ 14.

limited to the names of particular vendors but include knowledge of which vendors are the best sources for particular products."); *ITR Am., LLC v. TREK, Inc.*, No. 16-703, 2017 WL 5244715, at *6-7 (S.D. Miss. Sept. 26, 2017) (denying a defendant's motion to dismiss when plaintiff's alleged trade secrets included "inventory compositions, pricing lists, geographical sales data, and vendor identifications information").

The Court rejects Nanoo's argument challenging plaintiff's assertion that its vendor and contractor information is "vital business and operation information developed over many years by Bureau Veritas."[51]  Defendant contends that it "is unclear how Plaintiff could have 'developed' the 'rates and discount schedules *charged by the contractors*.'"[52]  But plaintiff is not claiming that its vendors' rates and discount schedules are themselves trade secrets, but instead that the "compilations of vendor pricing, rates, and services with relationship discounts" are trade secrets.[53]  Plaintiff notes that such rates are based on "volume-based discounts, customer tailored discounts, and negotiated rates over long periods of time,"[54] clearly demonstrating plaintiff's involvement in determining these rates and

---

[51]   *Id.*
[52]   R. Doc. 61-1 at 9.
[53]   R. Doc. 56 ¶ 18.
[54]   R. Doc. 67 at 17-18.

discounts.  And even if plaintiff had not been involved, its compilation of vendors' rates and discounts "may be protected as a trade secret given the difficulty and expense of compiling such information." *360 Mortg. Grp., LLC*, 2016 WL 900577, at *4; *cf. Metallurgical Indus., Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1202 (5th Cir. 1986) (noting that while generally known information, standing alone, cannot be a trade secret, "a combination of" disclosed technologies may qualify).

The Court finds that plaintiff has plausibly alleged that its contractor and vendor information are trade secrets.  Accordingly, the Court denies defendant's motion to dismiss as to plaintiff's contractor and vendor information.

### 4.    *Laboratory Technology*

Finally, the "laboratory technology" for which plaintiff claims trade secret protection allegedly consists of "equipment preferences, quantities, inventory, and prices tailored to historical demand from Bureau Veritas'[s] customers; laboratory designs, depreciation, and expenditures to optimize financial results, performance, and profitability; operating procedures and

techniques tailored to historical demand from Bureau Veritas'[s] customers; and research and development."[55]

As with plaintiff's vendor and contractor information, the Court previously found that plaintiff had not sufficiently alleged that Nanoo acknowledged the confidentiality of its laboratory technology, nor that such technology was not readily ascertainable.[56] The second amended complaint cures these deficiencies.

As an initial matter, plaintiff's second amended complaint provides additional information about the steps it took to maintain the confidentiality of its laboratory technology. Specifically, plaintiff states that it locks its laboratories and restricts access to authorized employees.[57] Plaintiff's employee handbook further states that "[p]hotography is prohibited in the laboratory unless it is a part of the employees' job function."[58]

Second, plaintiff's second amended complaint represents that Nanoo acknowledged that its laboratory technology was confidential by signing the confidentiality, non-solicitation, and assignment of rights agreement.[59] As relevant here, the agreement's definition of "[c]onfidential [i]nformation"

---

[55] R. Doc. 56 ¶ 18.
[56] R. Doc. 54 at 12
[57] R. Doc. 56 ¶ 25; *see also* 56-5 at 39.
[58] R. Doc. 56-3 at 15.
[59] R. Doc. 56 ¶ 29; *see also* R. Doc. 56-2 at 6.

included Bureau Veritas's "designs, inventions, research and development, processes, techniques, protocols, . . . [and] operations."[60]  By signing the agreement, Nanoo acknowledged the confidentiality of categories of information that mirror plaintiff's asserted laboratory technology trade secrets.

Third, plaintiff has adequately pled that its laboratory technology constitutes information that is distinct from generally available knowledge, and from information that any specialist in the M&M testing industry would know.  Although plaintiff's laboratory equipment and testing methods may be publicly available, compilations of its equipment lists, inventories, and designs, tailored to its customers' historical demands, is not public information.  *See Intertek USA Inc.*, 2014 WL 4477933, at *5 (finding that plaintiff had shown a likelihood of success on its claim that "testing methods" were trade secrets when "the precise mix and volume of methods" that plaintiff used were "not public knowledge").  It is these precise requirements and preferences that plaintiff represents were valuable to defendants, and enabled them to construct, in a matter of months, a lab that could meet plaintiff's customer's needs.[61]  *See Alfasigma USA, Inc. v. EBM Med., LLC,*

---

[60]    R. Doc. 56-2 at 2.
[61]    R. Doc. 56 ¶ 39.

No. 17-7753, 2018 WL 1604961, at *1-3 (E.D. La. Apr. 3, 2018) (holding that the plaintiff had sufficiently pled the existence of a trade secret by "setting forth allegations regarding the formulation of its [products], as well as customer lists and other information" that defendants used "in order to market [their products] to [the plaintiff's] customers"). Moreover, plaintiff contends that the lack of general availability of this information is further demonstrated by Cotecna's statement to former Bureau Veritas employees that if they had "the list of equipment and pricing ready," that "would be excellent."[62]  Accepting plaintiff's allegations as true, the Court finds that plaintiff has plausibly alleged that its laboratory technology is information that is not readily ascertainable.

In sum, plaintiff has adequately alleged that its "employee lists," "compilations of job duties and responsibilities," "contractor and vendor information," and "protected laboratory technology" are trade secrets.  The Court therefore denies defendant's motion to dismiss as to these alleged trade secrets.

---

[62]    *Id.*

### B.    Computer Fraud and Abuse Act

In plaintiff's second amended complaint, it brings a claim against Nanoo for violating section 1030(a)(4) of the CFAA.[63]  18 U.S.C. § 1030(a)(4). Defendant moved to dismiss this claim based on the Supreme Court's intervening ruling in *Van Buren v. United States*, 141 S. Ct. 1648 (2021), which abrogated the Fifth Circuit's interpretation of the CFAA.[64]  *See id.* at 1653 n.2 & 1655.  Plaintiff did not oppose this part of defendant's motion, and instead voluntarily withdrew its claim against Nanoo, but asked that the claim be dismissed without prejudice, "as new information uncovered in discovery about Nanoo's covert actions may meet the Supreme Court's new standard."[65]  Because the parties agree that plaintiff's CFAA claim against Nanoo should be dismissed, the Court construes plaintiff's response as a motion for voluntary dismissal of this claim pursuant to Federal Rule of Civil Procedure 41(a)(2).

The Fifth Circuit has explained that, "as a general rule, motions for voluntarily dismissal should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir.

---

[63]    R. Doc. 56 ¶¶ 85-93.
[64]    R. Doc. 61-1 at 11-12.
[65]    R. Doc. 67 at 8, 22.

2002).  For instance, courts may deny voluntary dismissal where the non-moving party has "expended significant time and effort litigating" the claim. *Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990)

Here, the Court finds that dismissal without prejudice is appropriate. Nanoo herself does not request that plaintiff's claim be dismissed with prejudice, nor has she indicted any opposition to plaintiff's request that the dismissal be without prejudice.[66]  Moreover, the Court finds that defendant has not expended extensive resources defending against plaintiff's CFAA claim.  *See id.*

## IV.   CONCLUSION

Accordingly, the Court DENIES defendant's partial motion to dismiss.[67]  The Court also DISMISSES plaintiff's CFAA claim without prejudice.[68]

New Orleans, Louisiana, this  10th  day of November, 2021.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[66]   R. Doc. 61-1 at 12-13.
[67]   R. Doc. 61.
[68]   R. Doc. 67 at 8; R. Doc. 56 (Count IV).

26